NO. 18-16012

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

VIP Products LLC

*Plaintiff-counter-defendant - Appellant*

v.

Jack Daniel's Properties, Inc.

*Defendant-counter-plaintiff - Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA, PHOENIX
THE HONORABLE JUDGE STEPHEN M. MCNAMEE
USDC CASE NO. 2:14-CV-02057-SMM

APPELLANT'S RESPONSE TO APPELLEE'S PETITION FOR
REHEARING AND PETITION FOR REHEARING *EN BANC*

**DICKINSON WRIGHT PLLC**
David G. Bray (dbray@dickinsonwright.com)
David N. Ferrucci (dferrucci@dickinsonwright.com)
Holly M. Zoe (hzoe@dickinsonwright.com)
1850 N. Central Avenue, Ste. 1400
Phoenix, AZ 85004-4568
Telephone: 602-285-5000
Facsimile: 844-670-6009
*Attorneys for Plaintiff-Counter-Defendant/Appellant*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................1

II.   REASONS FOR DENYING THE PETITION. ..............................3

    A.    The Panel Correctly Held That Bad Spaniels Is an Expressive Work to Which *Rogers* Applies. .........................................3

    B.    Because Bad Spaniels Conveys A Message, It Satisfies the Only Threshold Requirement for Application of *Rogers*....................5

    C.    The Panel Correctly Rejected JDPI's Efforts to Carve-Out Exceptions to *Rogers'* Threshold Requirement. ..................6

        1.    A Particularized Message About the Mark-holder is Not Required, But Is Nonetheless Present Here. .......................6

        2.    Bad Spaniels Is No "Ordinary Commercial Product." ..............7

        3.    Application of *Rogers* to Bad Spaniels Is the Logical Application of Binding Precedent................................8

        4.    The Medium of Expression is Legally Irrelevant, But Here Is Part of Bad Spaniels' Humorous Message....................9

        5.    Any Supposed Trademark Use Does Not Preclude Application of *Rogers*. ..........................................11

    D.    The Panel Correctly Held That Bad Spaniels Was Exempted Non-Commercial Use Under the TDRA.............................14

    E.    This Circuit's Definition of Commercial Speech Does Not Conflict with Other Circuits................................17

III.   CONCLUSION.............................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. City of Hermosa Beach*,
   621 F.3d 1051 (9th Cir. 2010) .......................................................................7, 11

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983).......................................................................................17, 18

*Brown v. Elec. Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ........................................................2, 4, 5, 6, 8

*Brown v. Entm't Merchants Ass'n*,
   564 U.S. 786, 131 S. Ct. 2729, 180 L. Ed. 2d 708 (2011) .................................10

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*,
   886 F.2d 490 (2d Cir. 1989) ................................................................................8

*Coleman v. City of Mesa*,
   284 P.3d 863 (Ariz. 2012) ..................................................................................9

*CPC Int'l, Inc. v. Skippy Inc.*,
   214 F.3d 456 (4th Cir. 2000) .............................................................................18

*Dawson v. Marshall*,
   561 F.3d 930 (9th Cir. 2009) ...............................................................................5

*Dex Media W., Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) .............................................................................17

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) .........................................................................6, 9

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management*,
   618 F.3d 1025 (9th Cir. 2010) ......................................................................12, 13

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
   700 F. App'x 251 (4th Cir. 2017).....................................................................18

*Hoffman v. Capital Cities/ABC, Inc.*,
   255 F.3d 1180 (9th Cir. 2001) ..........................................................................18

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995)..................................................................................9

*L.L. Bean, Inc. v. Drake Publishers, Inc.*,
811 F.2d 26 (1st Cir. 1987)...................................................................13

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
507 F.3d 252 (4th Cir. 2007) ......................................................1, 8, 10

*Mattel, Inc. v. MCA Records, Inc.*,
28 F. Supp. 2d 1120 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir.
2002) .........................................................................................................2

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) ...................................4, 9, 13, 14, 15, 16

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ...........................................7, 9, 11, 15

*Nike, Inc. v. Just Did It Enters.*,
6 F.3d 1225 (7th Cir. 1993) ..............................................................18

*Novalogic, Inc. v. Activision Blizzard*,
41 F. Supp. 3d 885 (C.D. Cal. 2013) ................................................13

*Radiance Found., Inc. v. N.A.A.C.P.*,
786 F.3d 316 (4th Cir. 2015) ...............................................1, 16, 17

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .................. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14

*Skidmore v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) (*en banc*) ............................................2

*Twentieth Century Fox Television v. Empire Distrib. Inc.*,
161 F. Supp. 3d 902, 907 (C.D. Cal. 2016), *aff'd*, 875 F.3d 1192
(9th Cir. 2017)....................................................................................4, 5

*Twentieth Century Fox Television v. Empire Distrib. Inc.*,
875 F.3d 1192 (9th Cir. 2017) .......................................................4, 5, 6, 7, 12

*United States v. Molina-Tarazon*,
285 F.3d 807 (9th Cir. 2002) ..............................................................3

*United States v. United Foods, Inc.*,
   533 U.S. 405 (2001)............................................................................17

*White v. City of Sparks*,
   500 F.3d 953 (9th Cir. 2007) ..............................................................7

## Statutes and Rules

15 U.S.C.A. § 1115(b)(1)-(9)...................................................................12

15 U.S.C.A. § 1115(b)(4)..........................................................................12

15 U.S.C.A. § 1125(c) ..............................................................................14

15 U.S.C.A. § 1125(c)(3)(A) ...............................................................15, 16

15 U.S.C.A. § 1125(c)(3)(B) ...................................................................16

15 U.S.C.A. § 1125(c)(3)(C) ...............................................................15, 16

Fed. R. App. P. 35(b)(1)(A) ..................................................................1, 10

Fed. R. App. P. 40(a)(2).........................................................................1, 2

## Other Authorities

16AA *Fed. Prac. & Proc. Juris.* § 3986.1 (4th ed.) ..................................3

*McCarthy on Trademarks and Unfair Competition* (5th ed.)................8, 16, 17, 19

William McGeveran & Mark P. McKenna, *Confusion Isn't
   Everything*, 89 NOTRE DAME L. REV. 253 (2013) ..............................13

## I.    INTRODUCTION

In vacating the District Court's ban on protected speech, the unanimous Panel scrupulously followed settled Ninth Circuit precedent in holding that a parody dog toy constituted First Amendment expression.  Jack Daniel's Properties, Inc. ("JDPI") seeks rehearing and rehearing *en banc*, but fails to show any error in the Panel's decision, or raise an issue of exceptional importance, and does not even come close to satisfying the "stringent" standards for rehearing, *see* Fed. R. App. P. 40(a)(2), or rehearing *en banc*. *See* Fed. R. App. P. 35(b)(1)(A).

Rehearing *en banc* "is not favored," and ordinarily will not be ordered unless the "panel decision conflicts with a decision of the United States Supreme Court or of the court to which the petition is addressed."  Fed. R. App. P. 35(b)(1)(A).  JDPI cites to no conflict within the Circuit, or with Supreme Court precedent, because there are none.

Nor has JDPI shown a conflict with other circuits; as the panel here recognized, the Fourth Circuit, prior to adopting the *Rogers* test in *Radiance Foundation, Inc. v. N.A.A.C.P.*, 786 F.3d 316, 330 (4th Cir. 2015), reached the same practical result in applying the likelihood-of-confusion test when it upheld, as non-infringing parodies, dog toys that looked like small Louis Vuitton handbags. *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007). Amicus curiae INTA does not even try to show *en banc*-worthy conflicts.

1

This case is *not* like the *Stairway to Heaven* dispute, which the Court took *en banc* because its own precedent—which a majority of circuits had rejected—was a story of "checkered application" full of adoption, judicial "distanc[ing]," and then re-embrace "in confusing ways." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1066-67 (9th Cir. 2020) (en banc). This case is just a matter of disagreement about the Panel's *application* of a settled rule to narrow facts consistent with uniform Ninth Circuit precedent.

Panel rehearing is also not required under Rule 40. "The petition must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended[.]" Fed. R. App. P. 40(a)(2). JDPI identifies no points of fact or law that were overlooked or misapprehended by the Panel.

Instead, JDPI merely rehashes the arguments presented in its brief that were properly rejected by the Panel, and renews its request that this Court carve-out exceptions to this Circuit's settled and straightforward speech protective precedent, which "dictates" that the *Rogers* test applies to First Amendment expression, *see e.g.*, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1242 (9th Cir. 2013), and does not permit a mark-holder to "enjoin the use of his mark in a noncommercial context simply because they find such parodies negative or offensive." *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1156 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002).

2

That JDPI is unhappy with the result supplies no basis to make the same rejected arguments again, or to grant the Petition. *See e.g.*, *United States v. Molina-Tarazon*, 285 F.3d 807, 808 (9th Cir. 2002) ("a petition for rehearing is not a brief on the merits [and] should not[] repeat arguments previously made in the briefs nor rehearse facts discussed in the opinion."); *see also* 16AA *Fed. Prac. & Proc. Juris.* § 3986.1 (4th ed.) ("It should go without saying that a petition for rehearing should not be filed simply to reargue matters already argued unsuccessfully in the original appeal proceedings[.]").

For these, and the reasons that follow, JDPI's Petition should be denied.

## II.    REASONS FOR DENYING THE PETITION.

### A.    The Panel Correctly Held That Bad Spaniels Is an Expressive Work to Which *Rogers* Applies.

JDPI's core contention in its Petition is that the Panel erred by "adopt[ing] a definition of expressive work unsupported by the Court's own jurisprudence[,] [and] erred in finding VIP's toy an expressive work—especially as a matter of law on appeal." Doc. 63-1 at 1, 17.  JDPI is wrong.

Rather than "adopt" a definition for an expressive work, the Panel simply applied the longstanding and settled definition promulgated by this Court:

> In determining whether a work is expressive, we analyze whether the work is "communicating ideas or expressing points of view."

3

Doc. 58-1 at 9 (quoting *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002)); *see also Brown*, 724 F.3d at 1241 (applying the test to a video game because "video games communicate ideas—and even social messages").

JDPI has never disputed that the Bad Spaniels parody conveys a message. JDPI's dilution claim targets the very message created by VIP's artistic transformation of the serious phrase, "Old No. 7 Brand", into the silly message, "The Old No. 2." JDPI cannot credibly argue on the one hand that Bad Spaniels conveys a message that tarnishes its brand, and on the other hand assert that Bad Spaniels is not an expressive work for purposes of the *Rogers* test. *See MCA*, 296 F.3d at 900; *Brown*, 724 F.3d at 1241.

Nor did the Panel err in determining that Bad Spaniels was an expressive work as a matter of law on appeal. This Court has long determined *de novo* whether, for purposes of applying *Rogers*, the work at issue is "communicating ideas or expressing points of view." *Twentieth Century Fox Television v. Empire Distrib. Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017) (citing *Brown*, 724 F.3d at 1240). "*De novo* review means that the reviewing court does not defer to the lower court's ruling but freely considers the matter anew, as if no decision had been rendered below."

4

*Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009).[1]  The Panel was correct to decide this legal question as a matter of law on appeal.

> **B.     Because Bad Spaniels Conveys A Message, It Satisfies the Only Threshold Requirement for Application of *Rogers*.**

"The only threshold for applying the *Rogers* test is whether the allegedly infringing use is contained in an expressive work." *Twentieth Century Fox Television v. Empire Distribution Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016), *aff'd*, 875 F.3d 1192 (9th Cir. 2017) (citing *Brown*, 724 F.3d at 1241).  JDPI cannot meaningfully distinguish this Court's precedents that "dictate" that the *Rogers* test applies.

> The Ninth Circuit has repeatedly made clear, without qualification based on the extent of the use, that the "*only* relevant legal framework for balancing the public's right to be free from consumer confusion" against First Amendment rights is the *Rogers* test.

*Empire Distribution*, 161 F. Supp. 3d at 906 (emphasis in original) (quoting *Brown*, 724 F.3d at 1242), *aff'd sub nom*. 875 F.3d 1192.

Were the Panel to rule that *Rogers* did not apply to this indisputably expressive work (as the District Court erroneously did below), *then* its decision *would* create an intra-Circuit conflict. *See e.g., Twentieth Century Fox Television v.*

---

[1] The Panel's *de novo* determination that Bad Spaniels is an expressive work does not conflict with the District Court's findings. *See* Doc. 42 at 14.

*Empire Distrib. Inc.*, 875 F.3d 1192, 1198 (9th Cir. 2017) ("the only threshold requirement for the *Rogers* test is an attempt to apply the Lanham Act to First Amendment expression").

### C. The Panel Correctly Rejected JDPI's Efforts to Carve-Out Exceptions to *Rogers'* Threshold Requirement.

Rather than point to intra-Circuit conflicts, or any dis-uniformity created by the Panel's ruling, JDPI's Petition simply renews its request that this Court overturn existing and longstanding precedent and engraft additional (and speech-chilling) threshold requirements onto the *Rogers* test.[2] JDPI's rehashed and previously rejected arguments provide no basis for granting rehearing.

### 1. A Particularized Message About the Mark-holder is Not Required, But Is Nonetheless Present Here.

JDPI once again argues *Rogers* should not apply because Bad Spaniels does not contain a sufficiently narrow comment on Jack Daniel's. Not only is the argument contrary to the factual record,[3] but engrafting this additional threshold requirement onto *Rogers* is contrary to this Court's precedent. *See E.S.S. Entm't*

---

[2] This Court has consistently rejected such requests. *See e.g.*, *Empire Distribution*, 875 F.3d at 1198; *Brown*, 724 F.3d at 1242.

[3] JDPI once again cherry picks from portions of the record that ignores the District Court's actual findings and Mr. Sacra's testimony that Bad Spaniels' message was aimed at JDPI's business and marketing practices. *See* ER 282-84; ER 4391; ER 3245; Doc. 42 at 22-23.

*2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) (Rejecting the argument that the alleged infringing use did not sufficiently target the original to merit protection under *Rogers*); *see also* Doc. 42 at 21-23.

The requested carve-out is also anathema to the First Amendment: "First Amendment protections do not apply only to those who speak clearly, whose jokes are funny, and whose parodies succeed." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 801 (9th Cir. 2003); *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1060 (9th Cir. 2010) ("[A] narrow, succinctly articulable message is not a condition of constitutional protection."); *see also White v. City of Sparks*, 500 F.3d 953, 956 (9th Cir. 2007) (rejecting the "argument that the message conveyed must be either explicit[,] or implicit but obvious[,] in order to merit protection"). Again, "the only threshold requirement for the *Rogers* test is an attempt to apply the Lanham Act to First Amendment expression." 875 F.3d at 1198. As the Panel correctly determined, that threshold requirement is met here.

## 2. Bad Spaniels Is No "Ordinary Commercial Product."

JDPI claims that Bad Spaniels is "an ordinary commercial product" to which the likelihood-of-confusion analysis, not *Rogers*, applies. But JDPI's contrived description finds no support in the factual record. The term "ordinary commercial product," as used in the relevant case law, simply means a commercial product that is devoid of any expressive elements. *See e.g., Rogers v. Grimaldi*, 875 F.2d 994,

998 (2d Cir. 1989); *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) ("the expressive element of parodies requires more protection than the labeling of ordinary commercial products."). JDPI's use of that term to describe an expressive parody is untenable.

### 3. Application of *Rogers* to Bad Spaniels Is the Logical Application of Binding Precedent.

Rather than testing its "outer limits," as JDPI suggests, Doc. 63-1 at 25, the Panel's determination that a parody dog toy constitutes First Amendment expression subject to the *Rogers* test is simply the logical application of the *Rogers* doctrine as consistently promulgated and applied in this and other Circuits.

"[T]he *Rogers* test [applies] in [Lanham Act] cases involving expressive works[.]" *Brown*, 724 F.3d at 1241-42. Bad Spaniels is an expressive work; it is a parody product, indeed, a recent entry in a long line of parody dog toys developed by a practiced and creative parodist. Doc. 16 at 9-10. Bad Spaniels conveys a parodic message. Doc. 58-1 at 10-11. The Panel's recognition that a dog toy can constitute parody or convey a humorous message is not even a novel one. *See Haute Diggity Dog*, 507 F.3d at 260.

"Parody is a form of artistic expression covered by the First Amendment." 6 *McCarthy on Trademarks and Unfair Competition* § 31:153 (5th ed.). This Court has consistently applied *Rogers* to commercially sold parody products. *See e.g.*,

*MCA*, 296 F.3d 894 (applying *Rogers* to parody song "Barbie Girl"); *Walking Mountain*, 353 F.3d 792 (applying *Rogers* to photographic parodies of Barbie); *Rock Star Videos*, 547 F.3d 1095 (applying *Rogers* to video game's "cartoon-style parody of East Los Angeles").

The Panel's unanimous holding that Bad Spaniels constitutes expressive parody to which *Rogers* applies is unassailable.

### 4. The Medium of Expression is Legally Irrelevant, But Here Is Part of Bad Spaniels' Humorous Message.

JDPI requests this Court to carve-out a categorical exception to application of the First Amendment to this particular medium of expression, contending that a dog toy, "by its nature, cannot[] contain editorial or cultural 'commentary'" in the same way as a song or a magazine article. Doc. 63-1 at 25. But the issue is not whether a dog toy can contain cultural commentary in the same way as a song, or article, but whether it can be expressive or communicate ideas. As the Panel correctly held, it can, and therefore "[t]he fact that VIP chose to convey this humorous message through a dog toy is irrelevant." Doc. 58-1 at 11 (citing *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995)); *see also Coleman v. City of Mesa*, 284 P.3d 863, 870 (Ariz. 2012) ("whether or not something is speech protected by the First Amendment cannot focus upon the medium chosen for its expression") (quotation omitted).

9

Were the Panel to conclude otherwise, *then* its decision *would* conflict with "a decision of the United States Supreme Court[.]" Fed. R. App. P. 35(b)(1)(A). *See Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790, 131 S. Ct. 2729, 2733, 180 L. Ed. 2d 708 (2011) ("the basic principles of freedom of speech and the press … do not vary when a new and different medium for communication appears.") (quotation omitted).

This is a particularly salient point here where the medium—a rubber, squeaky, dog toy—is very much a part of the message. In *Haute Diggity Dog*, the Fourth Circuit explained that the fact that "Chewy Vuiton" was presented in the medium of a dog chew toy contributed to the parody's humorous message; that "the toy irreverently presents haute couture [represented by Louis Vuitton] as an object for casual canine destruction." 507 F.3d at 260-61.  Similarly here, part of what makes Bad Spaniels funny is seeing a dog play with the toy, thus humanizing the dog (which dog owners typically find quite amusing), which further conveys the parodic message that "we need to … laugh at the humor of the constant bombardment of advertising and marketing that's going on."  ER 3244; ER 4391.

As JDPI concedes, the reason "movies, videogames, songs, photographs, and even greeting cards" are protected under *Rogers* is because those mediums are "designed to communicate messages." Doc. 63-1 at 21. But that is precisely what

10

parody in general is designed to do, and is specifically what parodist Stephen Sacra designed to do with Bad Spaniels. Doc. 42 at 21-23.

According to JDPI's rationale, if the medium of expression for Bad Spaniels were a photograph (*Walking Mountain*), or greeting card (*Gordon*), then *Rogers* would apply and the following would be protected under *Rogers*:




JDPI is simply wrong: "a form of speech does not lose First Amendment protection based on the kind of surface it is applied to." *Anderson*, 621 F.3d at 1061.

### 5.    Any Supposed Trademark Use Does Not Preclude Application of *Rogers*.

Another carve-out JDPI requests this Court to adopt is to preclude application of *Rogers* unless the defendant can demonstrate its entitlement to the statutory fair

use defense contained in 15 U.S.C.A. § 1115(b)(4)—that the alleged infringing use is "otherwise than as a mark".

This Court has already rejected a version of JDPI's argument in *Empire Distribution* and applied the *Rogers* test to uses that were much more clearly trademark uses than in the case at bar. There, the mark-holder argued that *Rogers* did not apply because "Fox use[d] the 'Empire' mark 'as an umbrella brand to promote and sell music and other commercial products.'" 875 F.3d at 1196. This Court rejected the carve-out, holding that *Rogers* applied to the use of the expressive mark "EMPIRE" affixed to ordinary "consumer goods such as shirts and champagne glasses bearing the show's 'Empire' brand." *Id.* at 1195.

JDPI does not distinguish this Court's holding in *Empire Distribution* (or even mention it in this context), but instead relies solely upon *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management*, 618 F.3d 1025 (9th Cir. 2010), which is not a *Rogers* case and did not involve First Amendment expression. *Id.* The issue there was not whether the failure to satisfy the statutory fair use defense in 15 U.S.C.A. § 1115 (b)(4) precluded application of *Rogers*, but whether the defendant could satisfy that defense. The Court held, given the factually intensive nature of that analysis, the issue could not be decided as a matter of law. 618 F.3d at 1039-40.

As *Fortune Dynamic* illustrates, the "otherwise than as a mark" statutory fair use defense, along with the other statutory defenses in 15 U.S.C.A. § 1115(b)(1)

through (9), are separate and apart from the First Amendment defense for expressive works under *Rogers*.

Moreover, while application of the "otherwise than as a mark" statutory fair use defense is a fact-intensive analysis that typically "should be resolved by a jury[,]" 618 F.3d at 1040, the First Amendment concerns embodied in this Court's *Rogers* precedent demand clear rules and guidance to expedite early resolution and avoid the chilling effects of prolonged and expensive litigation. "The *Rogers* test is relatively straightforward to apply, and is very protective of speech." *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 900 (C.D. Cal. 2013). Introducing a fact-intensive inquiry, such as the one urged by JDPI here, robs the test of its clarity. *See e.g.*, *William McGeveran & Mark P. McKenna, Confusion Isn't Everything*, 89 NOTRE DAME L. REV. 253, 305-06 (2013) (emphasizing the need for a categorical rule protecting use of a mark within expressive works to avoid the chilling effects of speech-deterring lawsuits).

Even if "Bad Spaniels" is being used as a trademark (albeit a subsidiary one to SILLY SQUEAKERS), it also is being used "otherwise than as a mark," namely, for "communicating ideas or expressing points of view." *MCA*, 296 F.3d at 900 (*quoting L.L. Bean, Inc. v. Drake Publishers., Inc.*, 811 F.2d 26, 29 (1st Cir. 1987)).

The *Rogers* Court recognized that titles often serve both a trademark and an expressive function; that they "are of a hybrid nature…both an integral element of

the film-maker's expression as well as a significant means of marketing the film to the public." 875 F.2d at 998. It was precisely the difficulty in separating these "inextricably intertwined" elements that drove the Court's concern that "overextension of Lanham Act restrictions in the area of titles might intrude on First Amendment values[.]" *Id.* The *Rogers* test was designed "to avoid such a conflict." *Id.*

Similarly here, if the Court were to adopt JDPI's unsupported linkage of two different defenses, "trademark rights would grow to encroach upon the zone protected by the First Amendment." *MCA*, 296 F.3d at 900.

> ### D. The Panel Correctly Held That Bad Spaniels Was Exempted Non-Commercial Use Under the TDRA.

JDPI's other ground for rehearing, involving the panel's holding under the Trademark Dilution Revision Act of 2006 ("TDRA"), 15 U.S.C.A. § 1125(c), is presented cursorily and without any citation to supporting authority, much less any *conflicting* authority. Doc. 63-1 at 23-25. JDPI contends that the panel erred in applying the noncommercial-use exception to "Bad Spaniels" because "[s]ometimes a chew toy is just that." Doc. 63-1, Pet. 25. "Sometimes," for sure, but certainly not here.

As an expressive parody, Bad Spaniels qualifies as a noncommercial use under Ninth Circuit precedent, without regard to JDPI's contention that "Bad

Spaniels" is used to sell the dog toy. This Court's binding and indistinguishable holdings in *MCA* and *Walking Mountain* apply:

> A dilution action only applies to purely commercial speech. *MCA*, 296 F.3d at 904. Parody is a form of noncommercial expression if it does more than propose a commercial transaction. *See id*. at 906. Under *MCA*, Forsythe's artistic and parodic work is considered noncommercial speech and, therefore, not subject to a trademark dilution claim.

353 F.3d at 812. For purposes of this analysis, there is absolutely no material distinction between the Bad Spaniels parody and artist Thomas Forsythe's "photos portray[ing] a nude Barbie," *id*. at 796, or Aqua's "Barbie Girl" parody song, *MCA*, 296 F.3d at 906-07. As in those cases, Bad Spaniels "is not purely commercial speech [because it] lampoons the [Jack Daniels' brand] image and comments humorously on the cultural values [VIP] claims [it] represents." *Id*.

JDPI also contends (for the first time) that applying the TDRA's statutory non-commercial use exception under 15 U.S.C.A. § 1125(c)(3)(C) without also requiring satisfaction of the statutory fair use defense under 15 U.S.C.A. § 1125(c)(3)(A) is contrary to the TDRA's legislative intent. JDPI is wrong

As this Court explained in *MCA*, (in its detailed explanation of the TDRA's legislative history that JDPI neither cites to nor discusses) the statute contains "three statutory exemptions [for] uses that, though potentially dilutive, are nevertheless permitted: comparative advertising; news reporting and commentary; and noncommercial use." 296 F.3d at 904. As the statute's plain language, and the cases

15

construing it make clear, these defenses can be asserted in the alternative (as VIP did here) and the failure to satisfy the requirements of one defense, does not preclude application of another defense. *See e.g.*, *MCA*, 296 F.3d at 904 (Holding "[t]he first two exemptions clearly do not apply" but that the "noncommercial use" exemption did).

As the Court explained in *MCA*, the statutory non-commercial use exception contained in 15 U.S.C.A. § 1125(c)(3)(C) allays First Amendment concerns not addressed by the statutory defenses contained in 15 U.S.C.A. § 1125(c)(3)(A) and (B). 296 F.3d at 906 ("the bill's sponsors relied on the 'noncommercial use' exemption to allay First Amendment concerns."). The three statutory defenses overlap to ensure robust First Amendment protection:

> [T]he overlap of exemptions represents a sort of overabundance of caution to statutorily provide for free speech concerns that the federal anti-dilution law would be used to silence "noncommercial" critics who use the famous marks of companies whose goods, services or policies were being criticized or mocked.

4 *McCarthy on Trademarks and Unfair Competition* § 24:128 (5th ed.); *see also Radiance Found., Inc.*, 786 F.3d at 330 (Explaining that "[t]he law provides three broad, overlapping categories within which any use of a famous mark, even if likely to cause harm or blurring, is not actionable" and holding that the exemption precluded a dilution claim despite evidence of dilution). Simply put:

16

> Even if the accused use is a trademark use, a parody can still be immune under free speech principles from liability for dilution by tarnishment.

4 *McCarthy on Trademarks and Unfair Competition* § 24:90 (5th ed.).

Rather than being contrary to the TDRA's legislative intent, the Panel's application of the non-commercial use exemption to Bad Spaniels is consistent with, and furthers, the intent.

### E. This Circuit's Definition of Commercial Speech Does Not Conflict with Other Circuits.

In determining that Bad Spaniels was a non-commercial use, the Panel applied this Circuit's (and the United States Supreme Court's) longstanding definition of commercial speech, a definition with which even JDPI agrees: "Commercial speech is 'defined as speech that does no more than propose a commercial transaction.'" Doc. 26 at 60 (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)).

While JDPI does not argue that the Panel's application of this definition of commercial speech creates an inter-circuit split, amicus INTA does. That contention is meritless. INTA cites to the Fourth Circuit's three-part "*Bolger* analysis," in *Radiance Foundation*, 786 F.3d 316.[4] But as the Fourth Circuit itself has

---

[4] This Court has held that the *Bolger* analysis only applies to close cases, *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 958-69 (9th Cir. 2012), which this case is

recognized, its *Bolger* analysis is not a uniform standard that the circuits consistently apply to determine whether speech is commercial under the Lanham Act: "Neither our precedent, nor the Supreme Court, has issued any determinative standard by which to assess if a message is commercial speech." *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 257 (4th Cir. 2017) (applying Lanham Act's false-advertising provision).

The more-consistent standard for "commercial speech" to emerge from the case law is the one the Ninth Circuit applies under the TDRA's noncommercial-use exception, specifically, speech that "'does no more than propose a commercial transaction.'" *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)). That standard does not conflict with any other circuit's definition of commercial speech. *See*, *e.g.*, *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 462 (4th Cir. 2000).

## III.   CONCLUSION

For decades, Jack Daniel's has spent millions of dollars to gain the national and global spotlight. "When businesses seek the national spotlight, part of the territory includes accepting a certain amount of ridicule. The First Amendment … allows such ridicule in the form of parody." *Nike, Inc. v. Just Did It Enters.*, 6 F.3d

---

not. Bad Spaniels is non-commercial speech even under that analysis. *See* Doc. 16 at 49-51.

1225, 1227 (7th Cir. 1993). As professor McCarthy has advised, "[a] certain toughening of the hide may be a more effective response than asking the courts to silence and fine the clowning critic." 6 *McCarthy on Trademarks and Unfair Competition* § 31:153 (5th ed.). The unanimous Panel properly rejected JDPI's efforts to silence a "clowning critic" when it rejected JDPI's attempts to avoid application of the First Amendment to protected speech. Its Petition provides no basis for revisiting that correct ruling.

**RESPECTFULLY SUBMITTED** this 15th day of May, 2020.

**DICKINSON WRIGHT PLLC**

By: *s/ David N. Ferrucci*

David G. Bray
David N. Ferrucci
Holly M. Zoe
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568
***Attorneys for Plaintiff-counter-defendant / Appellant***

19

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Ninth Circuit Rules 35-4(a) and 40-1(a) because it contains 4,179 words, excluding the table of contents, the table of authorities, signature lines, certificate of compliance, and certificate of service. This brief's typeface and type style comply with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Times New Roman type style.

By: _s/ David N. Ferrucci_

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 15, 2020.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

By: *s/ David N. Ferrucci*

4822-1950-0220 v2 [53913-11]